**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ILENE RACHEL PEPPER,

                Plaintiff,        7:13-cv-978
                                          (GLS)

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Conboy, McKay Law Firm<br>307 State Street<br>Carthage, NY 13619 | LAWRENCE D. HASSELER,<br>ESQ. |
| **FOR THE DEFENDANT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | VERNON NORWOOD<br>Special Assistant U.S. Attorney |

**Gary L. Sharpe**
**Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

Plaintiff Ilene Rachel Pepper challenges the Commissioner of Social Security's denial of Disibility Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Pepper's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

**II. Background**

On November 4, 2010 and November 16, 2010, respectively, Pepper filed applications for SSI and DIB under the Social Security Act ("the Act"), alleging disability since May 7, 2010. (Tr.[1] at 57, 64, 127-42.) After her application was denied, (*id.* at 71-76), Pepper requested a hearing before an Administrative Law Judge (ALJ), which was held on April 24, 2012, (*id.* at 27-55, 80-81). On July 10, 2012, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-25.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

Pepper commenced the present action by filing her complaint on August 14, 2013 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

## III. Contentions

Pepper contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 12-21.) Specifically, Pepper argues that the ALJ committed error in failing to: (1) find that her major depressive disorder (MDD), insomnia, and obesity are severe impairments; (2) properly weigh the opinion evidence; and (3) make a residual functional capacity (RFC) finding that is supported by substantial evidence.[2] (*Id.*) The Commissioner counters that the appropriate legal standards were used and the findings are supported by substantial evidence. (Dkt. No. 11 at 12-20.)

## IV. Facts

---

[2] Notably, Pepper attacks the RFC finding only insofar as it concerns her mental impairments. (Dkt. No. 10 at 18-21.) As such, the court does not specifically address the physical RFC determination.

3

The court adopts the parties' undisputed factual recitations. (Dkt. No. 10 at 2-10; Dkt. No. 11 at 2-9.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Severity Finding

First, Pepper argues that the ALJ's step two determination is flawed because he failed to find that her MDD, insomnia, and obesity are severe impairments within the meaning of the regulations. (Dkt. No. 10 at 12-14.) Pepper contends that the ALJ's failure to find these impairments to be severe, despite the record support, also "tainted the ALJ's analysis at

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

each of the subsequent steps." (*Id.* at 14.) As to depression, the Commissioner argues that the RFC determination reflects the ALJ's consideration of depression by limiting Pepper to unskilled work, and that, in any event, because the sequential analysis proceeded beyond step two, any error at step two was harmless. (Dkt. No. 11 at 12-13.) The court agrees with the Commissioner that remand is not required.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A finding of not severe is appropriate when an impairment, or combination of impairments, "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1521(a). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination

that an impairment is not severe—can be harmless error if the ALJ continues the analysis and considers all impairments in his RFC determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3-4 (N.D.N.Y. Feb. 7, 2012) ("Often when there are multiple impairments, and the ALJ finds that only some of the impairments, but not others, are severe, any error in the severity analysis is harmless because the ALJ continues with the . . . sequential analysis, and does not deny plaintiff's application based on the second step alone." (internal quotation marks and citation omitted)); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your [RFC].").

Here, the ALJ specifically considered whether Pepper's obesity and insomnia were severe impairments, and resolved that question adversely to her. (Tr. at 13-14.) After briefly recounting the evidence that pertains to these allegedly severe impairments, and citing to the medical evidence of record in that regard, the ALJ determined that the record was devoid of any evidence that these ailments caused any functional limitations. (*Id.*) The ALJ's severity determinations with respect to obesity and insomnia

are supported by substantial evidence[4] and free from legal error.

Pepper devotes exactly three sentences of her memorandum of law to her argument with respect to obesity and insomnia and provides a generic citation to the entire medical record and a single page reference for the proposition that "she is 5' 1" tall and weighs approximately 240 pounds," which is not even supported by the provided citation. (Dkt. No. 10 at 13.) What Pepper overlooks is the evidence of record that suggests that she suffered no significant limitation from the allegedly severe impairments, and the lacking evidence to support any significant limitation. For example, the ALJ cites to treatment notes that include Pepper's own completion of the Epworth Sleepiness Scale, where she indicated "no chance of dozing" while sitting and reading, watching television, sitting inactive in a public place, as a passenger in a car for an hour without a break, sitting and talking to someone, sitting quietly after a lunch without alcohol, and in a car while stopped for a few minutes. (Tr. at 313.) Pepper indicated only a "slight chance of dozing" when "[l]ying down to rest in the afternoon when circumstances permit." (*Id.*) As mentioned

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

above, the presence of a condition or impairment, without a showing that the same significantly impacts the claimant's ability to do basic work activities, is not sufficient to show that an impairment is "severe." *Bergeron*, 2011 WL 6255372, at *3.

Turning to Pepper's argument regarding MDD, despite her testimony that "[s]evere depression" was what she perceived to be her "most significant medical condition that[ kept her] from working on a regular full-time basis since [she] filed [her] claim," (Tr. at 40), the ALJ did not specifically consider whether MDD was a severe impairment at step two, (*id.* at 13-14). Because the ALJ found that Pepper suffered from a number of severe impairments, the sequential analysis continued, however. (*Id.* at 12-13.) Such an error is harmless where, as here, the claimant's overlooked impairments are nonetheless considered in conjunction with the RFC determination. *See Tryon*, 2012 WL 398952, at *3-4.

While he only mentions depression once in his written decision, (Tr. at 14), the ALJ did take into account the limitations from Pepper's mental impairments, (*id.* at 17-18). The records considered by the ALJ reflect that, despite complaints of depression by Pepper, her mental impairments were not disabling. For example, examining psychologist Dennis Noia

noted Pepper's report of depression symptomology and that her mood was, in fact, depressed and she "appeared sad," but ultimately she was "capable of understanding and following simple instructions and directions[,] performing simple and some complex tasks with supervision and independently[,] maintaining attention and concentration for tasks[,] learning new tasks[,] making appropriate decisions[, and] relat[ing] to and interact[ing] moderately well with others."  (*Id.* at 255-57.)  Dr. Noia also opined, however, that Pepper "appear[ed] to . . . hav[e] difficulty dealing with stress."  (*Id.* at 257.)  Moreover, Dr. E. Kamin, a medical consultant, similarly found that Pepper's mental impairments posed little difficulty to her functioning and that "[t]he severity of her [mental] impairments may pose mild to moderate restrictions on h[er] ability to adapt to changes," but that she could "understand and follow simple and moderately complex instructions, make simple and moderately complex decisions, and respond appropriately to supervisors and co-workers."  (*Id.* at 279-81.)  The ALJ's consideration of these medical records, and other evidence specifically mentioned in his decision, (*id.* at 17-18), demonstrates that any error in his analysis at step two with respect to MDD was harmless in light of his inclusion of all of Pepper's impairments at subsequent steps of the

9

sequential analysis.

B. <u>**Weighing Opinion Evidence**</u>

Next, Pepper asserts that the ALJ committed reversible error by failing to give controlling weight to the opinions of treating physician Maritza Santana and treating psychologist Cynthia Maguire in the medical source statement completed by Dr. Santana and co-signed by Dr. Maguire. (Dkt. No. 10 at 14-17.) Pepper also takes issue with the "significant weight" given to Dr. Kamin's opinion. (*Id.* at 16-17; Tr. at 18.) The court disagrees with Pepper that remand is necessary on these issues.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the

claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 404.1527(c).  The ALJ must provide "'good reasons' for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted).  "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Id.* (internal quotation marks and citations omitted).

Here, despite Pepper's treatment history with Dr. Santana, which the ALJ explicitly considered and relied upon in giving portions of her opinion "significant weight," less than controlling weight was appropriately given to Dr. Santana's opinion because of inconsistencies with it and other substantial evidence of record.  (Tr. at 18.)  This is so despite other evidence that may tend to support Dr. Santana's more restrictive opinion.  In particular, Pepper's reliance on treatment notes from Dr. Denny Walters, (Dkt. No. 10 at 16), does not negate the fact that other evidence

11

is inconsistent with Dr. Santana's opinion. Indeed, Pepper focuses only on the consistent medical evidence and entirely disregards contradictory evidence of record. Such contradictory evidence has largely been recounted above, see supra Part VI.A, in the form of the opinions of Drs. Noia and Kamin and the information that informs those opinions. As for the weight afforded to Dr. Kamin's opinion by the ALJ, it is apparent that the ALJ appropriately considered the factors outlined in 20 C.F.R. § 404.1527(c). (Tr. at 18 (mentioning that Dr. Kamin's "opinion was rendered after a thorough review of the medical evidence" and noting that it was "generally consistent with the reports of examining sources").) For all of these reasons, the court finds that the ALJ's determination with respect to weighing opinion evidence was free from legal error and supported by substantial evidence.

## C. RFC Determination

Lastly, Pepper contends that the mental RFC determination is flawed because it is inconsistent with the opinion of Dr. Santana, which was, as mentioned above, adopted by Dr. Maguire. (Dkt. No. 10 at 18-21.)[5] The court disagrees.

---

[5] The court, having rejected the premise from which Pepper begins, need not reach her not-quite-but-almost an argument that the ALJ violated

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Pepper argues that the ALJ failed to take into account "the full breadth of [her] limitations" as articulated in the medical source statement signed by Drs. Santana and Maguire when determining her RFC. (Dkt. No. 10 at 19-20.) As mentioned above, the ALJ gave "significant weight" to a portion of Dr. Santana's opinion, namely her belief that Pepper had "no limitations with regard to understanding, remembering, and carrying out simple instructions." (Tr. at 18, 440.) The balance of Dr. Santana's opinion, which included Dr. Santana's conclusion that Pepper was moderately or markedly limited in each of the other categories of work-related mental activities, was necessarily rejected by the ALJ. (*Id.* at 18,

---

his duty to further develop the record by seeking clarification from Drs. Santana and Maguire. (Dkt. No. 10 at 20-21.)

440-41.) Indeed, the ALJ specifically rejected so much of Dr. Santana's opinion as it related to Pepper's "ability to interact with others." (*Id.* at 18.) Moreover, the "significant weight" given to Dr. Kamin's opinion regarding Pepper's limitation as to "her ability to adapt to changes in a work setting" demonstrates that Dr. Sananta's opinion of marked limitation was likewise rejected. (*Id.* at 18, 280, 441.) As explained above, *see supra* Part VI.B, the ALJ weighed the opinion evidence in accordance with the regulations and his conclusions are supported by substantial evidence. Bearing the foregoing in mind, the RFC finding, which is free from legal error and supported by substantial evidence, will not be disturbed.

D. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Pepper's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 17, 2015
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court